UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Planet Fitness International Franchise

    v.                                          Case No. 22-mc-11-LM
                                                           Opinion No. 2022 DNH 061 P

JEG-United, LLC

**O R D E R**

On March 4, 2022, respondent JEG-United, LLC, served petitioner Carlos Ibarra with subpoenas to produce documents and deposition testimony in Miami, Florida. The subpoenas relate to ongoing litigation in this court, Case No. 20-693, between JEG-United and Planet Fitness International Franchise.

Ibarra, who is not a party in the related litigation, petitions to quash the subpoenas on several grounds. For the following reasons, the court finds that the subpoena for deposition testimony did not comply with Federal Rule of Civil Procedure 45(c), which permits subpoenas to command a person's appearance only within 100 miles of the person's residence, his place of employment, or a place where he regularly transacts business in person. The subpoena for production of documents, however, can be modified to comply with Rule 45(c). Ibarra's other arguments in support of quashing the subpoenas are unpersuasive. Accordingly, Ibarra's petition to quash (doc. no. 1) is granted in part and denied in part.

## BACKGROUND

Ibarra is a central figure in the related litigation between JEG-United and Planet Fitness.[1]  In short, JEG-United contends that Planet Fitness unfairly shifted opportunities to open Planet Fitness clubs in Mexico to Ibarra at JEG-United's expense.  A motion for partial summary judgment is pending in the related litigation, and the case is scheduled for trial in June 2022.

JEG-United has had trouble obtaining discovery from Ibarra.  It obtained a letter rogatory[2] to serve Ibarra with document requests and an order for a deposition in Mexico, but Ibarra did not respond.  JEG-United attempted to serve subpoenas on Ibarra at properties he owned in Miami, Florida, and San Antonio, Texas, but he was not present at either location.  Then, in February 2022, Planet Fitness told JEG-United that Ibarra would be available for a deposition in Miami on March 4.  Although the deadline to complete discovery would have passed by March 4, Planet Fitness, JEG-United, and Ibarra nonetheless agreed to the deposition.

On March 2—two days before the scheduled deposition—JEG-United's counsel asked Ibarra's counsel whether Ibarra would be producing the documents

---

[1] For the purposes of this order, "Planet Fitness" refers to both Planet Fitness International Franchise and its Chief Development Officer, Raymond Miolla, who is a counterclaim defendant in the related litigation.

[2] In this context, a "letter rogatory" is a request from a United States court to a foreign tribunal or agency to request cooperation in obtaining discovery.  See, e.g., DBMS Consultants Ltd. v. Computer Assocs. Intern., Inc., 131 F.R.D. 367, 369 (D. Mass. 1990).

requested in the letter rogatory at the Miami deposition. Ibarra's counsel told JEG-United's counsel that Ibarra would not be producing any documents.

During the March 4 deposition, JEG-United served Ibarra with two subpoenas. One subpoena commands Ibarra to produce documents (apparently the same documents requested via the letter rogatory) and the other commands Ibarra to appear at a second deposition. JEG-United asserts that the purpose of the second deposition would be for Ibarra to authenticate the produced documents.

Ibarra then filed this petition to quash the two subpoenas in the Southern District of Florida. Under Federal Rule of Civil Procedure 45(f), Judge Kathleen Williams of the Southern District of Florida directed that the motion be transferred to this court.[3] The matter is now fully briefed and ripe for a ruling.

## DISCUSSION

Ibarra raises several arguments in support of quashing the subpoenas. The court examines each argument in turn.

I. <u>JEG-United validly served the subpoenas on Ibarra.</u>

To start, Ibarra argues that JEG-United's service of the subpoenas was invalid because Florida state law grants immunity from service to "non-residents

---

[3] Rule 45(f) states, in relevant part, "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."

3

attending a legal proceeding in Florida." Doc. no. 1 at 5 (citing Pomerantz v. Hollowell, 502 So. 2d. 1314, 1314 (Fla. Ct. App. 1987)). Ibarra cites no federal case applying that rule, and Federal Rule of Civil Procedure 45—not state law—sets the requirements and limits of service of federal subpoenas. There is no text in Rule 45 indicating that federal courts should apply state laws in evaluating whether service of a subpoena was proper. Accordingly, this argument to quash the subpoenas is not persuasive.

Ibarra also argues that the subpoena to produce documents failed to comply with Rule 45(a)(4), which states: "If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." In response, JEG-United asserts that it sent notice of the subpoena to counsel for Planet Fitness. Ibarra replies that the notice was simultaneous with service of the subpoenas such that the service was invalid.

Ibarra has not shown that the notice of the subpoena to counsel for Planet Fitness was invalid because it was provided around the same time that JEG-United served the subpoena on him. The two cases that Ibarra cites in support do not stand for the proposition that near-simultaneous notice to parties and service to the non-party witness is invalid. Rather, the cases merely support the proposition that the court can quash a subpoena when notice was not provided to the parties. See Strike 3 Holdings, LLC v. Doe, No. 20-cv-1328-T-33CPT, 2020 WL 7138621, at *5

4

(M.D. Fla. Dec. 7, 2020); Mirra v. Jordan, No. 13 Civ. 5519(AT), 2014 WL 2511020, at *3 (S.D.N.Y. May 28, 2014).

Moreover, the purpose of the notice provision is to allow opposing parties the opportunity to object to the subpoena before compliance. See Fed. R. Civ. P. 45 committee note, 2013 amend. Courts are divided about whether notice provided to the other parties simultaneously with service of the subpoena complies with Rule 45(b)(4). See Fla. Media, Inc. v. World Publ'ns, LLC, 236 F.R.D. 693, 695 (M.D. Fla. 2006) (finding that simultaneous notice is sufficient); Kemper v. Equity Ins. Co., No. 15-cv-2961-TCB, 2016 WL 7428215, at *6 (N.D. Ga. Apr. 29, 2016) (discussing different court rulings about when the notice requirement of Rule 45 is satisfied). In any event, to warrant quashing a subpoena, the party who did not receive timely notice must have suffered some prejudice or harm as a result. See Vondersaar v. Starbucks Corp., No. C 13-80061 SI, 2013 WL 1915746, at *2 (N.D. Cal. May 8, 2013) (declining to quash subpoena that violated prior notice rule where the party that was not provided prior notice "suffered no prejudice from the violation"); Blaser v. Mt. Carmel Reg'l Med. Ctr., Inc., No. 06-2422-JWL, 2007 WL 852641, at *2 (D. Kan. Mar. 21, 2007).

Here, the date for compliance for the subpoenas was set several weeks after service was made and after notice was provided to Planet Fitness. In other words, to the extent notice was not provided to Planet Fitness "before" the subpoenas were served on Ibarra, Planet Fitness did not suffer any prejudice or harm as a result because it received notice and has had the opportunity to object. For these reasons,

5

the court finds that the timing of the notice provided to Planet Fitness does not warrant quashing the subpoenas.

II.     The subpoenas violate the 100-mile rule.

Next, Ibarra argues that the subpoenas, even if they were properly served, violate Rule 45(c). Under Rule 45(c), a subpoena may only command a person to attend a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). Similarly, a subpoena may only command the production of documents, electronically stored information, or tangible things at a place within 100 miles of those same places. Fed. R. Civ. P. 45(c)(2)(A). The court "must quash or modify a subpoena" that "requires a person to comply beyond the geographical limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3)(A)(iii).

The threshold question is whether Ibarra resides, is employed, or regularly transacts business within 100 miles of Miami, which is where the subpoenas directed compliance. Ibarra argues that he resides in Mexico City, that he is not employed within 100 miles of Miami, and that while he bought real estate in Miami, he does not "regularly transact business" there in person. In response, JEG-United points to Ibarra's property in Miami, which JEG-United says Ibarra characterized as a "residence" in his deposition.

Here, Ibarra's statement in his deposition that he owned a "residence" in Miami was different from stating that he was or is a resident of Miami. Ibarra

6

confirms that it was not his intention to suggest that he lives in Miami, as he elaborates in his supplemental declaration (doc. no. 14 at 13) that his daughter and son-in-law use the property he owns in Miami as a vacation property.  And, contrary to JEG-United's argument that Ibarra's statements lack credibility, there is nothing inconsistent about Ibarra's declaration, supplemental declaration, and his deposition testimony because—during his deposition—Ibarra testified that he lives in Mexico City.

In the alternative, JEG-United points to Ibarra's purchase of the Miami property, his sale of another Miami property, and a meeting between Ibarra and Planet Fitness in Miami.  JEG-United argues that these facts demonstrate that Ibarra regularly transacts business in Miami in person.  But this evidence shows that, at most, Ibarra sometimes conducts business in Miami.  Isolated real estate transactions and one potential business meeting do not amount to "regularly" transacting business in a location.  "Regularly" means, for example, "steady," "predictable," or "uniform."  See, e.g., Regularly, Oxford English Dictionary, https://www.oed.com/view/Entry/161419 (last visited May 3, 2022); Regular, Merriam-Webster, https://www.merriam-webster.com/dictionary/regular (last visited May 3, 2022) ("recurring, attending, or functioning at fixed, uniform, or normal intervals").  The isolated business identified by JEG-United is none of those things.  For these reasons, the subpoenas violate Rule 45(c).

III.  Modifying the subpoena to produce documents is warranted, but modifying the subpoena to testify is not.

As an alternative to quashing the subpoenas, JEG-United asks the court to modify them to require compliance at its counsel's office in Austin, Texas.  In a footnote, JEG-United asserts that Austin is within 100 miles of a San Antonio property purportedly owned by Ibarra and used as his company's principal place of business.  The court declines to modify the subpoenas on these grounds.  JEG-United has not shown that Ibarra resides or regularly conducts business in person at the San Antonio property identified in the papers.  The evidence submitted by JEG-United only demonstrates that Ibarra and several other partners have ownership interests in a company that owns 1% of a Canadian limited partnership with an address in San Antonio.

The court does, however, modify the subpoena to produce documents.  JEG-United initially argues, pointing to Trigeant Ltd. v. Petroleos de Venezuela, S.A., No. 08-80584-CIV, 2009 WL 10668731, at *3 (S.D. Fla. May 5, 2009), that the 100-mile rule does not apply to subpoenas seeking documents.  Ibarra correctly observes that Trigeant is not analogous to the circumstances here, and, in any event, Trigeant applied Rule 45 as it existed prior to substantial amendments in 2013.  Rule 45(c) as it exists today applies to subpoenas requesting production of documents.  See Fed. R. Civ. P. 45(c)(2)(A).

Nonetheless, several courts have found that, when it comes to documents that can be sent by mail or produced electronically, the 100-mile rule does not require a subpoena to be quashed.  See Merch. Consulting Group, Inc. v. Beckpat,

8

LLC, No. 17-11405-PBS, 2018 WL 4510269, at *1 n.5 (D. Mass. July 11, 2018) (collecting cases). These courts reason that the subpoenaed individual need not actually travel to the place where production is commanded so the purpose of the 100-mile rule—to avoid imposing burdensome travel on non-party witnesses—is obviated. See Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transp., 180 F. Supp. 3d 290, 293-94 (S.D.N.Y. 2016) (stating that the "point" of the 100-mile rule "is to avoid imposition of unreasonable travel burdens").

The subpoena JEG-United served in this case does not expressly indicate that Ibarra may comply by sending documents electronically or by mail. In these circumstances, the court has authority to modify a subpoena in lieu of quashing it. See Fed. R. Civ. P. 45(d); Sams v. GA W. Gate, LLC, 316 F.R.D. 693, 697 (N.D. Ga. Sept. 13, 2016) (modifying subpoena to produce documents to allow electronic production). Moreover, modifying a properly served subpoena to conform to Rule 45(c) is preferable to quashing it. See Probulk Carriers, Ltd., 180 F. Supp. 3d at 294 n.9. Accordingly, the court modifies the subpoena to produce documents to allow Ibarra to produce the requested documents electronically or by mail, at his choice.[4]

Finally, Ibarra's summary assertion that production would be unduly burdensome is insufficient to justify quashing the subpoena to produce documents. Ibarra also observes that the discovery deadline in the related litigation has passed such that discovery occurring between the parties should be concluded. Because of

---

[4] JEG-United states in its objection that it will "gladly accept electronic production of documents." See doc. no. 9 at 5-6.

the unusual delays that occurred as to Ibarra's compliance with the letter rogatory and the parties' previous agreement for him to testify after the discovery deadline closed, the court finds good cause to extend the discovery deadline in the related litigation.  The court will, by separate order, extend the discovery deadline in Case No. 20-cv-693 until June 1, 2022, but only for the purpose of production of the documents requested by the March 4 subpoena.  Further requests for extensions of the discovery deadline should be for extraordinary circumstances only and presented to the court, by motion, and accompanied by a memorandum explaining the good cause that warrants such extension.

## CONCLUSION

Ibarra's motion to quash (doc. no. 1) is granted in part and denied in part.  The subpoena to appear for a deposition (doc. no. 1-2) is quashed.  The subpoena to produce documents (doc. no. 1-3) is modified to permit compliance by sending responsive documents electronically or by mail (the choice to be made by Ibarra).  To the extent the subpoena to produce documents requires compliance by Ibarra's personal appearance, it is quashed.

JEG-United's assented-to motion to seal exhibits (doc. no. 8) covered by the protective order in Case No. 20-693 is granted.  This covers doc. nos. 9-12, 9-13, 9-14, and 9-15.

This matter having been resolved, the clerk of court shall close this miscellaneous case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 6, 2022

cc: Counsel of Record